UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
           :
ELIZABETH SILVER,
           :
                             Plaintiff,                       08 Civ. 6522 (JSR) (DF)
           :
      -against-                           **REPORT AND**
           :                       **RECOMMENDATION**
MARIO HERMANDO LAVANDEIRA, Jr.,
a/k/a MARIO LAVANDERIA, a/k/a PEREZ HILTON,  :
et al.,
           :
                             Defendants.
------------------------------------------------------------------------X

**TO THE HONORABLE JED S. RAKOFF, U.S.D.J.:**

In this action, plaintiff Elizabeth Silver ("Plaintiff") has alleged, *inter alia,* that defendant Mario Hermando Lavanderia ("Defendant") has engaged in copyright infringement by posting, on his Internet website, information derived from copyrighted material on Plaintiff's website. (*See generally* Second Amended Complaint, dated Nov. 21, 2008 ("Second Am. Compl.") (Dkt. 54).) On December 10, 2008, the Honorable Jed S. Rakoff referred to this Court, for a report and recommendation, Plaintiff's motion for a preliminary injunction to enjoin Defendant's alleged infringements of her copyrights and for permission to conduct discovery related to the infringements. (Dkts. 41, 45.)[1] For the following reasons, I hereby recommend that Plaintiff's motion for a preliminary injunction and related discovery be denied.

---

[1] Judge Rakoff had previously denied Plaintiff's preliminary injunction motion without prejudice, for lack of proof of service. (Dkt. 43.) When Plaintiff then submitted a declaration of service and subsequently renewed her motion, Judge Rakoff referred the renewed motion to this Court. (Dkt. 45.)

## DISCUSSION

### I.  THE DIGITAL MILLENNIUM COPYRIGHT ACT

As a threshold matter, Defendant argues that Plaintiff is not entitled to relief under Section 1203(b)(1) of the Digital Millennium Copyright Act (the "DMCA"), the provision of law which purportedly provides the statutory basis for Plaintiff's motion.  (*See* Defendant's Memorandum of Law in Opposition to Motion for a Preliminary Injunction, dated Dec. 23, 2008 ("Def. Mem.") (Dkt. 57), at 11-12; Plaintiff's Memorandum in Support of Motion for Miscellaneous Relief, dated Nov. 30, 2008 ("Pl. Mem.") (Dkt. 42), at 1.)  Section 1203(b)(1) provides that a court may grant injunctive relief to remedy violations of Sections 1201 and 1202 of the DMCA, neither of which appear to apply to Plaintiff's case.  17 U.S.C. § 1203(b)(1) (2006).

Section 1201 provides that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title."  17 U.S.C. § 1201 (2006).  Plaintiff has not alleged circumvention by Defendant of any such technological measure.  Section 1202 prohibits the removal or alteration of "copyright management information" from a validly copyrighted work and provides that "[n]o person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement" provide, distribute, or import for distribution "copyright management information that is false."  17 U.S.C. § 1202 (2006)  "Copyright management information is limited to components of . . . technological measures . . . [functioning as] automated systems."  *IQ Group v. Wiesner Publ'g, Inc.*, 409 F. Supp. 2d 587, 593-97 (D.N.J. 2006) (a logo and hyperlink in an e-mail advertisement did not constitute "copyright management information" because the logo and hyperlink were inserted into the

## DISCUSSION

### I.  THE DIGITAL MILLENNIUM COPYRIGHT ACT

As a threshold matter, Defendant argues that Plaintiff is not entitled to relief under Section 1203(b)(1) of the Digital Millennium Copyright Act (the "DMCA"), the provision of law which purportedly provides the statutory basis for Plaintiff's motion.  (*See* Defendant's Memorandum of Law in Opposition to Motion for a Preliminary Injunction, dated Dec. 23, 2008 ("Def. Mem.") (Dkt. 57), at 11-12; Plaintiff's Memorandum in Support of Motion for Miscellaneous Relief, dated Nov. 30, 2008 ("Pl. Mem.") (Dkt. 42), at 1.)  Section 1203(b)(1) provides that a court may grant injunctive relief to remedy violations of Sections 1201 and 1202 of the DMCA, neither of which appear to apply to Plaintiff's case.  17 U.S.C. § 1203(b)(1) (2006).

Section 1201 provides that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title."  17 U.S.C. § 1201 (2006).  Plaintiff has not alleged circumvention by Defendant of any such technological measure.  Section 1202 prohibits the removal or alteration of "copyright management information" from a validly copyrighted work and provides that "[n]o person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement" provide, distribute, or import for distribution "copyright management information that is false."  17 U.S.C. § 1202 (2006)  "Copyright management information is limited to components of . . . technological measures . . . [functioning as] automated systems."  *IQ Group v. Wiesner Publ'g, Inc.*, 409 F. Supp. 2d 587, 593-97 (D.N.J. 2006) (a logo and hyperlink in an e-mail advertisement did not constitute "copyright management information" because the logo and hyperlink were inserted into the

e-mail by people, rather than by automated systems).  Plaintiff has alleged that each of her news reports contains her name, and argues that this constitutes "copyright management information." (Second Am. Compl., at ¶ 135.)  Plaintiff has not alleged, however, that an automated technological system is responsible for the inclusion of her name in her news reports.  Plaintiff's name inserted into her news reports, without more, does not constitute "copyright management information" for purposes of invoking Section 1202 of the DMCA.  *See IQ Group*, 409 F. Supp. 2d at 593-97 (explaining that the DMCA "protects not the copyrights, but the technological measures that protect the copyrights" and "should not be construed to cover copyright management performed by people").

Nevertheless, in light of Plaintiff's *pro se* status, Plaintiff's failure to identify the correct statutory basis for injunctive relief is not, in itself, fatal to her motion.[2]  As Defendant concedes, 17 U.S.C. § 502 provides that a court may grant injunctive relief "to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a) (2006).[3]  Further, Plaintiff appears to base her

---

[2] Pro se litigants ordinarily benefit from a liberal reading of their papers, interpreted by the Court to support the strongest arguments they suggest.  *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).  In this case, however, Defendants have complained at length that Plaintiff has received assistance from an attorney (*see* Letter to the Court from Jeffrey M. Eilender, dated Nov. 5, 2008), and Plaintiff has admitted to receiving some legal assistance, although not in the actual drafting of her submissions (*see* Conference Tr. at 9-10, Nov. 7, 2009).  Because she has received legal assistance, Plaintiff is not entitled to the same degree of liberal construction afforded an unassisted *pro se* plaintiff.  Yet, as the degree of assistance she has received is unclear, the Court has proceeded to examine the substance of her arguments, to see if they may warrant relief, even if Plaintiff has relied on an inapplicable statutory provision in support of her motion.

[3] Although Plaintiff does not cite 17 U.S.C. § 502(a) in her preliminary injunction motion, she has alleged "copyright infringement in violation of 17 U.S.C. §§ 101 and 501 et seq." in her most recent pleading.  (Second Am. Compl., at ¶ 1.)  In addition, acknowledging the deficiency in her motion, Plaintiff has now sought to submit an Amended Notice of Motion.  (*See* Plaintiff's Declaration, dated Dec. 31, 2008 ("12/31/08 Silver Decl.") (Dkt. 59), at ¶¶ 7-12.)  In light of this Court's liberal construction of Plaintiff's motion, such an amendment is unnecessary.

motion, at least in part, on a state law misappropriation claim.  (*See infra* at Point III.)  In order to give full and fair consideration to the arguments raised in Plaintiff's motion, this Court will consider whether she may be entitled to injunctive relief on either of these alternative grounds.

## II.     COPYRIGHT INFRINGEMENT

### A.     Applicable Legal Standards

To succeed on a motion for a preliminary injunction, a party must show (1) irreparable harm in absence of the injunction and either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.  *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 476 (2d Cir. 2004).  An injunction that requires a positive act, such as the recalling of infringing material, rather than preservation of the status quo, is a mandatory injunction. *Lennon v. Premise Media Corp., L.P.*, 556 F. Supp. 2d 310, 318-19 (S.D.N.Y. 2008). A mandatory injunction requires a more rigorous showing:  that of a "clear" or "substantial" likelihood of success on the merits.  *Id*.  In this case, Plaintiff seeks an injunction directing, *inter alia*, that Defendant "take down the copied, stolen, misappropriated and infringed upon works to date."  (Pl. Mem., at 5.)  Plaintiff is thus required to establish a "clear" or "substantial" likelihood of success on the merits of her underlying claims.

To demonstrate a likelihood of success on the merits on a copyright infringement claim, a plaintiff must establish (1) ownership of a valid copyright and (2) that a defendant has copied the constituent elements of the work that are original.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345-50 (1991); *NXIVM Corp.*, 364 F.3d at 476.  In a copyright case, the irreparable harm requirement of a preliminary injunction motion can be met by proof of a likelihood of success on the merits.  *NXIVM Corp.*, 364 F.3d at 476.

4

1. **Ownership of a Valid Copyright**

    a. **Copyright Registration**

Although registration is not a requirement of holding a valid copyright, an action for copyright infringement may not be brought until a copyright has been registered. 17 U.S.C. § 411(a) (2006). A copyright is not considered validly registered until the U.S. Copyright Office has approved or refused the pending application for registration of the copyright. *See, e.g., Muniz v. Morillo*, No. 06 Civ. 6570 (RJS), 2008 U.S. Dist. LEXIS 69163, at *8 (S.D.N.Y. Sept. 10, 2008) (allegations that a plaintiff has filed applications and is awaiting registration do not suffice); *Tabachnik v. Dorsey*, No. 04 Civ. 9865 (SAS), 2005 U.S. Dist. LEXIS 14267, at *10 (S.D.N.Y. July 15, 2005) (same); *Greene v. Columbia Records/Sony Music Entm't Inc.*, No. 03 Civ. 4333 (RJH) (DF), 2005 U.S. Dist. LEXIS 3062, at *9-*10 (S.D.N.Y. Feb. 25, 2005) (submitting, belatedly, a certificate of registration does not correct the deficiency); *Corbis Corp. v. UGO Networks, Inc.*, 322 F. Supp. 2d 520, 521 (S.D.N.Y. 2004) ("The combination of Section 410 and 411 thus make plain that the federal district courts do not have jurisdiction over a claim for federal copyright infringement until the Copyright Office has either approved or refused the pending application for registration.") (citing numerous cases).

    b. **Copyrightability of the Subject Matter**

Facts, whether alone or as part of a compilation, are not original and may not be protected by copyright. *Feist Publ'ns, Inc.*, 499 U.S. at 350-51. A factual compilation may be protected if it features an original selection or arrangement, but the copyright only extends to that selection or arrangement, and not to the underlying facts or information contained therein. *Id*. Moreover, "'[t]he copyright in a compilation . . . extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work.'"

5

*Id*. at 359 (citing 17 U.S.C. § 103(b)).  "[A] subsequent compiler remains free to use the facts contained in another's publication to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement."  *Id*. at 349.

Ideas contained within a copyrighted work also may be freely copied, as the copyright protects only the particular original expression of those ideas, if any.  *Id*. ("'No matter how much original authorship the work displays, the facts and ideas it exposes are free for the taking. . . . The very same facts and ideas may be . . . restated or reshuffled by second comers, even if the author was the first to discover the facts or to propose the ideas.'") (internal citation omitted).

### 2. Copying of Original Elements of a Copyrighted Work

In order to establish a likelihood of success on a copyright infringement claim, a plaintiff must not only demonstrate a validly held copyright, but must also demonstrate that the defendant has copied the constituent elements of the work that are original.  *Feist Publ'ns, Inc.*, 499 U.S. at 345-50.  This requires proof both of (1) actual copying, which a plaintiff may establish by demonstrating "probative similarity" combined with "access," and of (2) illegal copying, which requires "substantial similarity" between protectible elements of the plaintiff's work and the defendant's.  *See Boone v. Jackson*, 206 Fed. Appx. 30, 31 (2d Cir. 2006); *Nihon Keizai Shimbum, Inc. v. Comline Bus. Data, Inc.*, 166 F.3d 65, 69-70 (2d Cir. 1999); *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 123 (2d Cir. 1994).  The standard test in determining "substantial similarity" is the "ordinary observer test":  whether an average lay observer would overlook any dissimilarities between the works and would conclude that one was copied from the other.  *Nihon Keizai Shimbum, Inc.*, 166 F.3d at 70.  "Where the work at issue contains both protectible and unprotectible elements, the test must be more discerning, excluding the unprotectible elements from consideration."  *Id*. (internal quotation and citations omitted).

B. <u>**Deficiencies of Plaintiff's Copyright Infringement Claim**</u>

Plaintiff has not shown on her motion – and it appears that she cannot show – that she is likely to prevail on the merits of her copyright infringement claim.

As an initial matter, although Plaintiff alleges that her work is protected by registered copyrights (*see* Second Am. Compl., at ¶ 22 ("Plaintiff's website and its entire content are registered with the U.S. Register of Copyrights, pursuant to and in accordance with 17 U.S.C. § 410."); *see also* Declaration of Elizabeth Silver, dated Nov. 30, 2008 ("11/30/08 Silver Decl.") (Dkt. 41), at ¶ 8 (declaring that Plaintiff's website and its contents "have been copyrighted, the copyright fees have been paid and a copyright notice is prominent on [her] website")), Plaintiff has not submitted a certificate of copyright registration for any of her work and has acknowledged that a final decision has not been made on her pending applications (*see* 12/31/08 Silver Decl., at ¶ 16 ("[O]ther Courts in this district have held that jurisdiction arises . . . before a final decision on the application has been made. . . . Such are the facts in my case.")).

As Plaintiff points out (*see* 12/31/08 Silver Decl., at ¶¶ 16-18), a few courts in this circuit have determined that a pending application for copyright registration is sufficient to give a court jurisdiction over an infringement claim, *see, e.g., Havens v. Time Warner, Inc.*, 896 F. Supp. 141 (S.D.N.Y. 1995); *Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 210 F. Supp. 2d 147 (E.D.N.Y. 2002). As set forth above, however (*see supra* at Point II(A)(1)(a)), the emerging consensus among courts in this district is that the mere filing of applications and payment of the associated fees is insufficient, as a matter of law, to meet the statutory requirement that a copyright be registered prior to the initiation of an infringement action. As Plaintiff has failed to meet this requirement, she cannot satisfy her burden of showing a "clear" or "substantial" likelihood of prevailing on her infringement claim.

Moreover, even if the Court were to find that Plaintiff's work is protected by registered copyrights, Plaintiff has not provided evidence capable of establishing an inference of illegal copying as to any original element of her work. The vast body of Plaintiff's published work consists of facts and news items compiled on her website. The facts that Plaintiff has compiled on her website are, by definition, not original and are not protected by copyright. *Feist Publ'ns, Inc.*, 499 U.S. at 350-51. Thus, as a matter of law, Plaintiff's allegations that Defendant posted blog entries containing facts that had been previously published by Plaintiff cannot support a claim for copyright infringement.

To the extent that Plaintiff has selected facts and arranged her compilation of facts in an original way, her selection and arrangement may be protected. *Id*. A review of the parties' respective submissions, however, quickly dispels any notion that the selection and arrangement of facts on Defendant's website are substantially similar to those on Plaintiff's website. Further, although Plaintiff's expressions of fact or ideas may be protected to the extent those expressions are original, *id*., Plaintiff has not shown the Court any instances of her original *expression* of particular facts which subsequently were expressed similarly by Defendant. On the contrary, as Defendant has shown, his distinctive sarcastic and ironic tone constitutes a significantly different expression of the underlying facts, such that an ordinary observer would not conclude that his expressions had been copied from Plaintiff's. (*See* Declaration of Barbara Lavandeira, dated Dec. 23, 2008 ("Lavandeira Decl.") (Dkt. 56), at ¶¶ 17-27.) In light of the fact that Plaintiff has had unfettered access to Defendant's published blog entries on the Internet and has submitted to the Court those which she presumably believes to be most similar to hers, additional discovery would shed no light on this issue and is unwarranted.

Under all of these circumstances, Plaintiff has not demonstrated a likelihood of success on her copyright infringement claim, *see Lennon,* 556 F. Supp. 2d at 318-19, and also has not shown that there are "sufficiently serious questions going to the merits" of this claim to warrant injunctive relief, *see NXIVM,* 364 F.3d at 476.

### III.    MISAPPROPRIATION OF "HOT NEWS"

Although Plaintiff's motion, on its face, requests relief only for Defendant's alleged violations of the DMCA, Plaintiff has also submitted a declaration in connection with her motion, asserting that Defendant has misappropriated "hot news" from her. (*See* 11/30/08 Silver Decl., at ¶ 15; *see also* 12/31/08 Silver Decl., at ¶ 8; Second Am. Compl., at ¶ 1.) Misappropriation of "hot news" is a state common law claim. The elements of such a claim under New York law are that "(i) the plaintiff generates or collects information at some cost or expense; (ii) the value of the information is highly time-sensitive; (iii) the defendant's use of the information constitutes free-riding on the plaintiff's costly efforts to generate or collect it; (iv) the defendant's use of the information is in direct competition with a product or service offered by the plaintiff; [and] (v) the ability of other parties to free-ride on the efforts of the plaintiff would so reduce the incentive to produce the product or service that its existence or quality would be substantially threatened. *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 852 (2d Cir. 1997).

For reasons similar to those discussed above, Plaintiff's "hot news" misappropriation claim is unlikely to succeed on the merits. The same information that was allegedly gathered by Plaintiff through costly efforts was widely available and published by numerous other sources on the Internet, generally before it was published by Plaintiff. (*See* Lavandeira Decl., at ¶¶ 46-52, and attached chart (Ex. A).) The fact of such widespread availability calls into question

Plaintiff's conclusory assertion that she incurred substantial costs in obtaining the information at issue. Similarly, the fact that the information in question was widely available undermines any claim by Plaintiff that she possessed property rights in that information. *See Nat'l Basketball Ass'n*, 105 F.3d at 853 ("[Hot-news misappropriation] is about the protection of property rights in time-sensitive information . . . .").

     Moreover, Plaintiff has not made any showing that she actually incurred any significant costs in obtaining the allegedly misappropriated information. Plaintiff has alleged that she "collects and gathers newsworthy information, creates and edits [her] news reports and transmits [her] news reports at substantial economic, professional and personal cost" (*see* Second Am. Compl., at ¶ 112), but she has not pleaded any specific facts supporting this assertion. Nor has Plaintiff explained in her declarations what particular costs were incurred in the gathering or creation of such information; nor has she submitted any documentation of her supposed costs. It is not the role of the Court to speculate as to Plaintiff's costs, and, in the complete absence of any initial showing that she can satisfy the elements of her misappropriation claim, Plaintiff is not entitled to an evidentiary hearing on the question. *See Welch Allyn, Inc. v. Tyco Int'l Servs. AG*, 200 F. Supp. 2d 130, 145 (N.D.N.Y. 2002) (where a plaintiff has not met its initial burden, it may not use a preliminary injunction hearing as "an opportunity . . . to remedy inadequacies in its moving papers"); *Allens Creek / Corbetts Glen Preservation Group, Inc. v. Caldera*, 88 F. Supp. 2d 77, 83 (W.D.N.Y. 2000) ("'[I]t has always been the rule that the movant bears the burden of persuasion to establish the situation meets the standard for a preliminary injunction,

and must offer proof beyond the unverified allegations of the pleadings.'") (quoting *Bascom Food Products Corp. v. Reese Finer Foods, Inc.*, 715 F. Supp. 616, 624 (D.N.J. 1989)).[4]

## CONCLUSION

For all of the foregoing reasons, based on the submissions made by both parties and without need of an in-person hearing or further discovery, I hereby recommend that Plaintiff's motion for a preliminary injunction (Dkt. 41) be denied in its entirety.[5]

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff, United States Courthouse, 500 Pearl Street, Room 1340, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street,

---

[4] To the extent that Plaintiff belatedly seeks to modify her motion in order to base her request for injunctive relief on an "unjust enrichment" claim (*see* 12/31/08 Silver Decl., at ¶¶ 7-12), the Court notes that any injury suffered by Plaintiff on account of Defendant's alleged unjust enrichment could be remedied by payment of restitution, *see United States ex rel. Taylor v. Gabelli*, No. 03 Civ. 8762 (PAC), 2005 U.S. Dist. LEXIS 26821, at *20 (S.D.N.Y. Nov. 3, 2005), and thus her injury would not be irreparable, *see, e.g., Interel Environmental Technologies, Inc. v. United Jersey Bank,* 894 F. Supp. 623, 635 (E.D.N.Y. 1995) (where Plaintiff's complaint was essentially one for breach of contract and unjust enrichment, plaintiff failed to establish irreparable harm); *PDL Vitari Corp. v. Olympus Indus., Inc.,* 718 F. Supp. 197, 205 (S.D.N.Y. 1989) (availability of monetary remedy on an unjust enrichment claim precludes a finding of irreparable harm). Moreover, a claim for unjust enrichment requires a showing of a quasi-contractual relationship between the parties, pursuant to which the plaintiff expected to be compensated by the defendant at the time the benefit was conferred on the defendant. *See Allstate Ins. Co. v. Administratia Asigurarilor De Stat*, 948 F. Supp. 285, 312 (S.D.N.Y. 1996). Based on Plaintiff's own recounting of the facts of this case, the parties had no such relationship here. Accordingly, Plaintiff would also be unlikely to prevail on any unjust enrichment claim.

[5] The preliminary injunction hearing scheduled before this Court for January 15, 2009, is cancelled pending Judge Rakoff's consideration of this Report and Recommendation.

Room 525, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Rakoff. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*

Dated: New York, New York
January 7, 2009

Respectfully submitted,

*[signature]*
DEBRA FREEMAN
United States Magistrate Judge

Copies to:

Ms. Elizabeth Silver
545 8th Avenue, Suite 401
New York, NY 10018
Fax: (973) 467-3307

Jeffrey M. Eilender, Esq.
Schlam Stone & Dolan LLP
26 Broadway
New York, NY 10004
Fax: (212)344-7677